## THE STATE v. MURMANN, *Appellant.*

### Division Two, November 5, 1894.

1. **Criminal Practice**: ENFORCING RECOGNIZANCE: SURETY. A proceeding to enforce a recognizance in a criminal case is not an original action in which the defendant is entitled to a jury trial but is a mere continuation of a proceeding already begun.

2. ————: ————: DISCHARGE OF SURETY. A surety produced the principal in court and after trial and the return of a verdict of guilty the sheriff made manual caption of the prisoner and started with him to the jail and the surety then left the court room. *Held,* that the surety was discharged.

*Appeal from St. Louis Criminal Court.*—HON. H. L. EDMUNDS, Judge.

REVERSED.

*Harvey & Hill* for appellant.

(1) The court should have granted a trial by jury. "The *scire facias* upon a recognizance is in its nature a civil proceeding, as distinguished from a criminal proceeding." *State v. Woerner,* 33 Mo. 216. "It has been often decided that *scire facias* is an action; it is also a suit." *Milsap v. Wildman,* 5 Mo.

425; *Wolff v. Schaeffer*, 4 Mo. App. 367; *Brown v. Railroad*, 37 Mo. 299; *Humphrey v. Lundy*, 37 Mo. 323. (2) *Scire facias* upon a recognizance entered into a criminal proceeding, in no respect partakes of the original criminal proceeding, out of which it originated, but is held to be a civil action. *State v. Chandler*, 79 Me. 172. "And it has been settled that *scire facias* on a recognizance, like debt, is a civil action, and partakes in no respect of the character of a criminal proceeding." · *State v. Kinne*, 41 N. H. 238. (3) The act of the sheriff in taking charge of defendant after his conviction, and disappearing with him, released the surety. "Any act done by the state or its officers under lawful authority that would deprive the securities of control over their principal, would change the relation the parties sustained to each other and their relation to the state, and would thereby release the sureties from their obligation." *Peacock v. State*, 44 Tex. 11; *Lundley v. State*, 17 Tex. App. 120; *Roberts v. State*, 22 Tex. App. 64. The arrest of the defendant, though improvident and unauthorized, will discharge the sureties, for it interferes with the sureties' control and supervision over his principal. *Medlin v. Commonwealth*, 11 Bush. (Ky.) 605; *Com. v. Coleman*, 2 Met. (Ky.) 382. (4) Failure to continue the cause or the motion at the May term to the July term, released the surety and he could not be required to have the principal present at · said July term. The condition of the bond is that the principal shall respond at the May term and at any future term to which the cause may be continued. *Swank v. State*, 3 Ohio St. 429; *Keefhaver v. Com.*, 2 Pa. 240; *Smith v. People*, 1 Park Cr. (N. Y.) 317; *State v. Mackey*, 55 Mo. 51, is directly and squarely· on the point and is so conclusive that citation of further authority is unnecessary.

*R. F. Walker*, Attorney General, for the state.

A *scire facias* is not a proceeding triable by a jury. *State v. Heed*, 62 Mo. 559; *State v. Randolph*, 22 Mo. 474; *State v. Rodgers*, 36 Mo. 138; *State v. Peyton*, 32 Mo. App. 522.

GANTT, P. J.—At the January term, 1893, of the St. Louis criminal court, a *scire facias* issued, citing appellant to show cause why execution should not be had upon a judgment of forfeiture that had been taken against him on the thirtieth day of July, 1892. The *scire facias* sets forth that appellant became surety in a recognizance on May 16, 1892, for the appearance of one Abrahams, conditioned that said Abrahams "should personally appear before our St. Louis criminal court during the then present May term, A. D. 1892, and on the first day of any further term to which the cause against him might be continued, then and there to answer an indictment * * * against said Abrahams for the offense of embezzlement, and should not depart our said court without leave thereof," etc.; that Abrahams was convicted at the May term on June 8, 1892, and filed a motion for a new trial, and that said motion was taken under consideration and was decided at the July term, 1892, and that thereupon said Abrahams failed to appear for sentence, etc.

Appellant's answer sets up: *First, nul tiel* record; *second*, a general denial; *third*, that on June 8, 1892, surety delivered his principal, and he was tried and convicted, and thereupon he was taken charge of and arrested by the sheriff; and *fourth*, that the condition of the bond was for the appearance of principal at the May term of court and to any further term to which the cause might be continued, and that the cause was

not continued to any other term. No reply or other pleading was filed by respondent.

The cause coming on for trial, respondent demanded a trial by jury and saved his exceptions to the action and ruling of the court in refusing a jury trial.

The respondent offered in evidence the bond and record of forfeiture thereof.

On behalf of the defendant, testimony was. produced tending to show, and it was conceded by plaintiff, that the facts at the time of the trial of the principal, Benjamin Abrahams, on the eighth day of June, 1892, were as follows:

The surety produced the. principal for trial, and a conviction resulted, the verdict being a punishment of two years in the penitentiary, the surety remaining seated inside the bar of the court in order to make certain that the principal remained until the end of the trial; that upon a verdict of guilty being rendered by the jury on the said eighth day of June, a deputy sheriff laid his hands upon and took charge of the principal in front of the bar and in open court; and, after the surety and principal had then and there shaken hands with each other and said farewell, said deputy sheriff, still retaining his hold and possession of the principal, started to the cage or lock-up adjoining the court room with the said Abrahams, which said cage is used for the confinement of prisoners; and at the same time the surety, Murmann, left the court room and building, feeling and believing that his duty was fully discharged and that he had nothing further to do in the premises; and that thereafter, during the same day, and much to his surprise, he saw the principal upon the street, but did not understand or know how he had procured his release; that it is not made to appear by the court record or otherwise why or how said principal was discharged from the afore-

said possession of him by said deputy sheriff, or how said principal was again allowed to go at large; that no order or motion was made in the case of said principal until a motion for a new trial was filed on the eleventh day of June, 1892, three days after the aforesaid conviction. It was also made to appear by the records of the court that said motion for a new trial was not acted upon or disposed of until the following July term of court, and that no order was made continuing said motion, or continuing said case against the said Abrahams from the aforesaid June term until the aforesaid July term of court.

At the conclusion of the testimony, the defendant requested the court to give the following instructions and declarations of law, to wit:

"The court instructs that if, upon the conviction of defendant, Abrahams, a deputy sheriff in open court and in the presence of the surety, laid hands on and took possession of said defendant, and after he and his surety had then and there shaken hands, said sheriff started to the lock-up or place of confinement of prisoners under arrest, and that thereupon the surety left the court room, then and in that event the defendant was arrested by the state's officers, the surety was dispossesed of his principal and was no longer responsible for his further appearance at court and the verdict and finding should be for the defendant.

"The court instructs that if the verdict of guilty was rendered against the defendant on the eighth day of June, in the presence of the defendant and surety, and that no order was then and there made for defendant's further appearance, and that no motion for a new trial was filed until the eleventh day of June, then the surety was on said eighth day of June discharged from further responsibility for the production of said defendant."

The court refused said instructions and the appellant excepted, and judgment was rendered against defendant Murmann. Appellant filed his motions for new trial and in arrest of judgment and saved his exceptions to the overruling of the same and perfected his appeal.

I. There was no error in refusing a jury trial. Several of these cases have been argued at this term. This point was made and decided adversely to appellant in *State v. Hoeffner, ante, p.* 488, in an opinion by BURGESS, J., in which we all concur in the decision of Judge LEONARD in *State v. Randolph*, 22 Mo. 474, in which it was held that a proceeding to enforce a recognizance in a criminal case is not an original action at law, in which defendant is entitled to a jury trial, but is a mere continuation of a proceeding already begun. A contrary view would deprive the criminal court of the state of all power to enforce recognizances taken by them, because, if this be a mere action to collect money, clearly the jurisdiction is civil. *Lawton v. State*, 5 Tex. 272.

But recognizances are a part of the proceedings in the exercise of a criminal jurisdiction and it is a fundamental rule of law that where jurisdiction of the main question attaches, every incident necessary to enforce that jurisdiction follows as a matter of law. A recognizance is a matter of record and the *scire facias* is the process for carrying it into execution. And while it is sometimes denominated a suit, it is only so to the extent that the defendant may plead to it. It is *judicial* rather than *original* in its nature, for when final judgment is rendered the whole record is considered as one.

A *scire facias* upon a recognizance in a criminal prosecution is not a civil proceeding, so as to entitle a party to remove such a cause to a federal court under the judiciary act and the constitution of the United

States.   *Respublica v. Cobbet*, 3 Dallas (Penn.), 467.
The universal rule at common law was that recogni-
zances must be prosecuted in the courts in which they
were taken.    The cognizors by entering into a recog-
nizance submitted themselves to the jurisdiction of the
court, and a forfeiture was a conditional judgment.

The importance of the question has induced me to
add these observations in addition to those submitted
by my brother in *State v. Hoeffner, supra*, and to agree
fully with him that it was not a case for a jury trial.

II.    But we think the court erred in refusing to
discharge the surety upon the undisputed evidence that
he had fully complied with his obligation for the appear-
ance of his principal.    The record discloses that at the
time named in the recognizance the surety produced
his principal in court.    The case was called, the defend-
ant appeared with his counsel, a jury was empaneled,
the evidence heard and the jury returned into court
with a verdict of guilty.   The defendant was present
to abide the order of the court.    Thereupon a deputy
sheriff, in the presence of the court, laid his hands upon
the principal, Abrahams; and the surety, Murmann,
and Abrahams shook hands and bid each other fare-
well and the deputy sheriff retaining his hold started
with his prisoner to the lock-up adjoining the court
room, used for the confinement of prisoners.    There-
upon the surety, supposing he was fully discharged,
left the court room.

No order or motion was made in the case for three
days, when a motion for new trial was entered, which
was not decided until the next term.    No order was
made continuing the cause.    When the verdict of guilt
was rendered it was the duty of the court to order the
prisoner into the custody of the sheriff and when the
sheriff did in fact take charge of the principal by an
unequivocal assertion of authority, and without which

his act would have been an unwarranted trespass, and started with him to the court prison, the surety was discharged. This manual caption of the prisoner by the sheriff in the presence of the court abated and dispensed with the necessity for a formal surrender of the prisoner by his bail. He had complied with his obligation.

We are not to be understood as countenancing a loose practice in such cases. The trial courts upon the coming of a verdict of guilt should regularly order the prisoner into the custody of the sheriff, unless his recognizance expressly secures his freedom until final sentence.

For the error in refusing to discharge the surety upon this showing the judgment must be and is reversed. All of this division concur.